IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CV-229-FL

| | | |
|---|---|---|
| PANDUIT CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CORNING INCORPORATED, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 23). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the reasons that follow, the court grants defendant's motion.

## STATEMENT OF THE CASE

On February 7, 2018, plaintiff, owner of United States Patent Numbers 8,351,027 ("'027 patent") and 8,488,115 ("'115 patent"), both entitled "Method and Metric for Selecting and Designing Multimode Fiber for Improved Performance," initiated this suit asserting claims against defendant Corning Optical Communications LLC, for patent infringement, induced infringement, and contributory infringement in violation of 35 U.S.C. § 271(a), (b), and (c), respectively, in the district court for the Western District of North Carolina.[1] The parties successfully moved three times

---

[1] After this action was filed, it was determined that defendant Corning Optical Communications LLC's parent company, above-named defendant Corning Incorporated, is the appropriately named defendant. Defendant Corning Incorporated does not have physical presence in the Western District, but does in the Eastern District. (See DE 19). On July 18, 2018, the parties filed joint motion to substitute Corning Incorporated for Corning Optical Communications LLC and amend the case caption, which motion was granted the next day.

for order granting motion for extension of time for defendant to file answer and then filed joint motion to transfer to this district, which transfer occurred on May 23, 2018.

Also on May 23, 2018, defendant filed the instant motion to dismiss in this court, to which plaintiff filed response, defendant filed reply, and plaintiff, with permission of the court, filed surreply. During this time, the court stayed this case pending resolution of the instant motion.

## STATEMENT OF THE FACTS

The relevant facts alleged in plaintiff's complaint are summarized as follows.

The United States Patent and Trademark Office issued the '027 patent on January 8, 2013, and the '115 patent on July 16, 2014, both of which relate to innovate methods using new and useful techniques for selecting multimode optical fiber. Both patents share the same description of the invention and have largely identical claims, with both patents including one method claim, reciting a "method for selecting multimode optical fiber." More specifically, the '115 patent claims as follows:

> 1. A method for selecting multimode optical fiber for use in a communications network, said method comprising:
>    measuring a pulse delay for pulses traveling through different radii of a number of multimode optical fibers:
>    subtracting the pulse delay at a first radius of each multi mode optical fiber from the pulse delay at a second, larger radius of each multimode fiber; and
>    choosing for use in the communications network those optical fibers in which the result of subtracting the pulse delay at the first radius from the pulse delay at the second radius is a negative number.
> 2. The method of claim 1 wherein said first radius is 5μm and said second radius is 19 μm.
> 3. The method of claim 1 wherein said first radius is 5μm and said second radius is 20 μm.
> 4. The method of claim 1 wherein said first radius and said second radius are 14 μm to 15μm apart.

(See '115 patent (DE 1-2) at col. 6, ll. 32-47; see also '027 patent (DE 1-1) at col. 6, ll. 30-46

(largely identical to '115 patent)).

In other words, the patents at issue propose a three-step method for selecting optical fiber: 1) fiber is measured at two different locations in a certain way, 2) those two measurements are subtracted, and 3) the fiber is chosen if the result of that subtraction is a negative number. (See Compl. (DE 1) ¶¶ 11-12). The patent explains that fibers having a negative Differential Mode Delay ("DMD") shift, or a negative number resulting from the "measure of the difference in pulse delay . . . between the fastest and slowest modes traversing the fiber," have lower error rates and outperform positive DMD shifted fibers. (See '015 patent (DE 1-1) at col. 1, ll. 34-37; id. at col. 5, ll. 24-26 ("The negative DMD shift fibers exhibit lower [bit error rates] overall and significantly outperform the positive DMD shifted fibers.")).

Plaintiff alleges that on information and belief, defendant, alone or with others, sells, manufactures, imports, uses, offers for sale, has made or selected, or used measurements to select and/or classify "fiber optic materials, including multimode optical fiber," using methods that infringe plaintiff's patents. (Id. ¶¶ 13-16; see also id. ¶¶ 18-22, 30-34 (same)).

In support, plaintiff first alleges defendant "use[s] measurements to select and/or classify fiber optic materials, including multimode optical fiber, based on testing [the materials] using methods that infringe," as allegedly evidenced by a video entitled Corning's Manufacturing Advantage, July 26, 2013, https://www.youtube.com/watch?v=7tsF3mSpqX8 [https://perma.cc/4PWQ-YCNZ], wherein "at 3:45, Defendant explains that '[T]hen optical and physical parameters are measured to verify performance against specification.'" (Id. ¶ 16).[2]

---

[2] Employing language from the '115 and '027 patents, plaintiff additionally assert defendant "measures the peak delay and/or pulse delay for pulses traveling through different radii of a number of multimode optical fibers to determine the design of, and to select, the fiber optic materials, including multimode optical fibers." (Compl. (DE 1) ¶16; see also id. ¶¶ 23-26, 35-37).

Second, plaintiff alleges as follows:

> On information and belief, for at least Defendant's OM4+ fiber, measurement of relative delays indicates that for the low radial region 1-3 microns and high radial region 15-17 microns, such fiber systematically (i.e., in all 12 fibers in a cable) has a Differential Mode Delay (DMD) profile exhibiting negative p-shift or negative relative delays.

(Id. ¶ 26; see also id. ¶ 38 (same as applied to '115 patent)).[3] In other words, plaintiff alleges, upon information and belief, "testing of cables containing Corning fiber . . . systematically (i.e., all 12 fibers in the cable) exhibited a negative DMD shift." (See DE 28 at 15).

## DISCUSSION

A.  Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint, "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). To meet this standard, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

---

[3] Plaintiff alleges defendant has knowledge of the relevant patents and defendant's infringement by "at least on or about a December 20, 2107 meeting between Plaintiff and Defendant wherein such was explained to Defendant." (Compl. (DE 1) ¶¶ 19, 20, 31, 32).

When ruling on a motion to dismiss, the court may consider the facts as alleged in the complaint, "documents attached to the complaint, . . . [and documents] attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007) (citations omitted).

B.  Analysis

Defendant argues that plaintiff has failed to sufficiently allege that defendant directly or indirectly infringed plaintiff's asserted patents. The court will address each argument in turn below.

1.  Direct Infringement

"Direct infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." Akamai Techs., Inc. v. Limelight Networks, Inc. 797 F.3d 1020, 1022 (Fed. Cir. 2015) (citing BMC Res., Inc. v. Paymentech, L.P., 498 F.3d 1373, 1379–81 (Fed. Cir. 2007)); 35 U.S.C. § 271(a). "A method patent claims a number of steps . . . [and] the patent is not infringed unless all the steps are carried out." Limelight Networks, Inc. v. Akamai Techs., Inc., 134 S. Ct. 2111, 2117 (2014). A plaintiff's complaint must "place the alleged infringer on notice of what activity is being accused of infringement." Lifetime Indus., Inc. v. Trim–Lok, Inc., 869 F.3d 1372, 1379 (Fed. Cir. 2017) (citation omitted). There is no requirement for plaintiff to "prove its case at the pleading stage." In re Bill of Lading Transmission & Processing Sys. Patent Litig., 681 F.3d 1323, 1339 (Fed. Cir. 2012) (citation omitted).

Plaintiff argues the complaint "asserts sufficient facts, based on the data publically available to it, to allege that Corning's secret methods of manufacturing and selecting at least its OM4+ fiber infringes . . . confirmed by measurement of commercially-purchased cable containing Corning's OM4+ fiber and public YouTube video confirming that Corning tests the optical and physical

5

parameters of its fibers prior to shipping." (DE 28 at 12; see also id. at 9 ("The plausibility of these allegations is confirmed by Panduit's assessment of bundled cables containing Corning's OM4+ fiber, where all twelve of the fibers in the cable systematically exhibited a negative p-shift or negative relative delays.")).

First, regarding the YouTube video, this video, as alleged by plaintiff, states only that defendant measures its fiber to verify performance. That defendant tests its fiber through measurement does not plausibly state a claim for infringement of plaintiff's patented methods.

Second, taking plaintiff's allegations as true, plaintiff has alleged that when testing defendant's OM4+ fiber, measurement of the relative delays consistent with step one of plaintiff's method yield systematically, or with regard to all 12 fibers in the cable, a negative DMD profile.[4] Put differently, plaintiff tested defendant's fiber, measuring the fiber in two places and subtracting those two measurements, and plaintiff found the result was negative.[5]

Plaintiff only has alleged testing results that are consistent with the use of plaintiff's method, but not that plaintiff's method was employed or that plaintiff's method is the only way in which to produce negative DMD shift. Additionally, and most importantly, plaintiff has not alleged beyond bare assertions devoid of further factual enhancement that defendant selects OM4+ fiber as a result of the negative DMD profile. Plaintiff argues that the results of plaintiff's testing, the "systematic exhibition of these properties in each fiber in a bundle of 12 fibers," "is statistically unlikely absent

---

[4] Although plaintiff argues in briefing that plaintiff measured or assessed defendant's OM4+ fibers, plaintiff only stated in the complaint that, upon information and belief, measurement of defendant's OM4+ fiber "systematically (i.e., all 12 fibers in the cable) exhibit[s] a negative DMD shift." (See Complaint (DE 1) ¶¶ 26, 38). Assuming plaintiff has sufficiently alleged it has measured and assessed defendant's OM4+ fiber, plaintiff has failed to plausibly allege based on that testing defendant has infringed, as discussed above.

[5] Defendant disputes the results of this test, stating defendant "provided testing data of its fiber showing that the DMD shifts are both positive and negative, which is irreconcilable with the use of Plaintiff's methods." (DE 29 at 9).

purposeful selection, and, therefore, consistent with the fibers being selected according to the patented Panduit methods." (DE 28 at 9). Again, the selection of fibers may be consistent with plaintiff's patent methods, but plaintiff has failed to allege beyond bare accusations that defendant has employed plaintiff's patent methods, asserting only that the fibers are statistically likely to be chosen by "purposeful selection," not by plaintiff's patented selection process. Here, plaintiff has alleged "a sheer possibility that a defendant has acted unlawfully," Iqbal, 556 U.S. at 678, but no more.

Plaintiff argues that it does not have access to any further information and thus what has been provided plausibly states a claim to survive motion to dismiss. (See, e.g., DE 28 at 13 ("To the best of Panduit's knowledge, there is simply nothing else publicly available upon which Panduit could have relied")).[6] Plaintiff relies heavily on the court's order in DermaFocus LLC v. Ulthera, Inc., 201 F. Supp. 3d 465, 469 (D. Del. 2016), which addresses this situation as follows:

> In the context of patent litigation, it is logical to presume that a defendant has greater access to and, therefore, more information about its accused method. The degree of public information about any accused method varies widely, as does the degree of specificity with which any asserted invention is claimed. Given the focus of the above articulated standard of review on reasonable notice of plausible claims under the circumstances, the question a court must address with each case is whether the plaintiff at bar has provided sufficient information to allow the court to determine plausibility and to allow the named defendant to respond to the complaint. Absent specific guidance from the Federal Circuit directing the court to front-load the litigation process by requiring a detailed complaint in every instance, the court declines to do so.

Id.

The court thereafter held that "plaintiff has given defendant reasonable notice of a plausible

---

[6] Defendant disputes this assertion, stating that "Plaintiff and its technical expert have in their possession Corning's Standard Operating Procedure ("SOP") that includes information about Corning's internal processes, as well as data that rebuts Plaintiff's mistaken beliefs about Corning's fiber." (DE 29 at 6).

7

claim for direct infringement" where plaintiff identified the specific product that allegedly performed the claims method and explained how the product used the allegedly infringing ultrasound technology in addition to providing exhibits showing how the accused product used ultrasound to lift skin. Id. at 466, 469-70; see also Complaint, DermaFocus LLC v. Ulthera, Inc., 201 F. Supp. 3d 465 (D. Del. 2016) (No. 11). In that case the court rejected defendant's assertion that plaintiff must specify "which particular combinations of components . . . allegedly infringe when used" or "allege how all the claimed method steps are performed," noting the asserted claim did not so require and arguably the information was not in the public domain. DermaFocus, 201 F. Supp. 3d at 470.

Here, the court is not holding that plaintiff must specify which particular combinations of components allegedly infringe when used or how all the claimed method steps are performed. However, plaintiff has not identified the specific product, service, or activity that has allegedly performed the claimed method, only the product on which the claimed method has allegedly been performed, has not explained how defendant has used plaintiff's method, nor offered exhibits or any other sufficient factual matter in support of plaintiff's claims. In order to plausibly allege infringement, plaintiff must plausibly allege that some activity by defendant performs a "selection" of fibers "for use a communications network" using the three steps of plaintiff's patented method; plaintiff has not done so here.

Plaintiff additionally cites K-Tech Telecommunications, Inc. v. Time Warner Cable, Inc., 714 F.3d 1277, 1286 (Fed. Cir. 2013) for the proposition that "[a] defendant cannot shield itself from a complaint for direct infringement by operating in such secrecy that the filing of a complaint itself

8

is impossible."[7]  However, the K-Tech court further noted that the complaint must place the "potential infringer . . . on notice of what activity . . . is being accused of infringement," id. at 1284, which plaintiff has failed to do in the current instance.  As stated above, plaintiff has not identified the specific product, service, or activity that has allegedly performed the claimed method, and defendant does not have notice of what is being accused nor does the court have the opportunity to meaningfully evaluate the plausibility of plaintiff's infringement theory.

Other cases cited by plaintiff do not offer any more support than those discussed above, where plaintiffs in those cases simply pleaded more than that which is pleaded here.  See Rhodes Pharm. L.P. v. Indivior, Inc., No. CV 16-1308, 2018 WL 326405, at *5-6 (D. Del. Jan. 8, 2018) (rejecting defendant's argument that plaintiff must allege "all claim element have been infringed" and "identify a specific direct infringer" where plaintiff 1) "identifies the elements of the two independent claims at issue," 2) states defendant has induced infringement by instructing other to "use Defendant's Suboxone Sublingual Film in a manner that directly infringes," 3) "specifies [how] Defendant's instructions were carried out," and 4) "identifies which claim elements are infringed by which specific instructions"); Pers. Audio, LLC v. Google, Inc., No. 1:15-CV-350, 2017 WL 4837853, at *3 (E.D. Tex. May 15, 2017) (citing allegations based on "information and belief" and holding plaintiff sufficiently alleged direct infringement based on these allegations but also in that

---

[7] K-Tech was decided prior to December 1, 2015, when the Supreme Court made effective abrogation of Form 18 of the Appendix of Forms to the Federal Rules of Civil Procedure ("Form 18") entitled "Complaint for Patent Infringement," which provided a sample allegation of direct infringement.  In K-Tech the Federal Circuit held that compliance with Form 18 "effectively immunize[d] a claimant from attack regarding the sufficiency of the pleading." K-Tech, 714 F.3d at 1283 (citation omitted).  However, post-abrogation, a complaint must meet the Iqbal/Twombly standard for pleading direct infringement, although the difference between the two standards may not be of great significance.  See Lifetime, 869 F.3d at 1377 ("The parties assume that there is a difference between the requirements of Form 18 and Iqbal / Twombly; however, we have never recognized such a distinction . . . .  In any event, we need not resolve the question whether there is a difference between the two standards here because, as we explain, the SAC met the Iqbal / Twombly standard for pleading direct infringement.").

9

plaintiff "identifies a specific category of products believed to be manufactured using the patented method—Google Play Music—and through its claim chart attachments to the Amended Complaint, the specific features of the accused technology that embody the claimed inventions"); Prowire LLC v. Apple, Inc., No. CV 17-223, 2017 WL 3444689, at *5 (D. Del. Aug. 9, 2017) (holding "[d]istrict courts allow plaintiffs to make allegations of direct patent infringement on information and belief," and holding plaintiff sufficiently alleged direct infringement where plaintiff alleged defendant's accused inductors meet each limitation of two independent claims of plaintiff's patent where some but not all of those limitations were pleaded based on information and belief); see also id. *4 ("In support of its allegations, Prowire includes x-ray images of the accused inductors depicting the copper coil wound around the magnetic core and spectrum tests showing the magnetic core is made up of 37% iron and the magnetic resin layer is made up of 51% carbon and 35% iron.").[8]

In sum, plaintiff has failed to adequately plead that defendant has directly infringed plaintiff's asserted patents, and plaintiff's claim for direct infringement is dismissed without prejudice.

2.     Indirect Infringement

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35

---

[8] Likewise, plaintiff cites Gracenote, Inc. v. Sorenson Media, Inc., No. 2:16-CV-950, 2017 WL 2116173, at *3 (D. Utah May 15, 2017). However, in that case, the court held as follows:

> Together with the exhibits, the Complaint describes the subject matter of the patents (Compl. ¶ 9, Dkt. No. 2), states its theory of infringement (Id. at ¶¶ 23, 26, 29, 32), names and describes the alleged infringing product (Id. at ¶¶ 18–19), provides a detailed description of the alleged infringing conduct (Id. at ¶¶ 19–22), and provides all information that detailed infringement charts would provide. (Id. at ¶¶ 20–22 and Exhibits.) . . . . The infringing conduct alleged is specific and detailed. (Id. at ¶¶ 19–22.) Although some allegations are pled by "information and belief," this is not prohibited by the Federal Rules of Civil Procedure, and is appropriate when the information is particularly within the control of the defendant.

Id. (emphasis added). Plaintiff here has fallen short of this standard.

10

U.S.C. § 271(b). To state a claim for induced infringement, a plaintiff must allege 1) knowledge of the patent, 2) specific intent that another party infringe the patent, and 3) knowledge that the induced acts constitute infringement. See Commil USA, LLC v. Cisco Sys., Inc., 135 S. Ct. 1920, 1926 (2015); Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1355 (Fed. Cir. 2018). As relevant here, contributory infringement occurs when a party 1) "sells within the United States . . . a material or apparatus for use in practicing a patented process," 2) which "constitut[es] a material part of the invention," 3) "knowing the same to be especially made or especially adapted for use in an infringement of such patent," and 4) the material or apparatus is "not a staple article or commodity of commerce suitable for substantial noninfringing use . . . ." 35 U.S.C. § 271(c). "Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." Commil, 135 S. Ct. at 1926.

Plaintiff's allegations for induced and contributory infringement restate the statutory language of § 271 and therefore those allegations state legal conclusions and are not sufficient to state a claim for induced and contributory infringement. See Nemet Chevrolet, 591 F.3d at 255. Regarding induced infringement, plaintiff states only, without further factual enhancement, that defendant "actively induce[s] others" to infringe and that "[t]o the extent any third party performs any of the steps discussed above, the performance of such steps is attributable to Defendant because it directs and controls the performance of those functions and/or because Defendant is in a joint enterprise with such third party." (Compl. (DE 1) ¶¶ 19, 21-25, 27, 31, 33-37, 39). Regarding plaintiff's claim of contributory infringement, plaintiff states only that unnamed others conduct involves "material[s] and apparatus[es]" for use in practicing the infringing methods that the actors know to be "especially made or especially adapted for use in an infringement of [the asserted

11

patents] and not a staple article or commodity of commercial suitable for substantial noninfringing use." (Id. ¶¶ 20, 32).

Additionally, although direct infringement and indirect infringement, in other words induced infringement or contributory infringement, "are distinct concepts, with distinct standards," "liability for indirect infringement of a patent requires direct infringement," and therefore a "complaint[] must plausibly allege that the . . . patent was directly infringed to survive . . . motion to dismiss." Bill of Lading, 681 F.3d at 1333; see also Linear Tech. Corp. v. Impala Linear Corp., 379 F.3d 1311, 1326 (Fed. Cir. 2004) ("There can be no inducement or contributory infringement without an underlying act of direct infringement."). Here, as stated above, plaintiff has failed to plead direct infringement; plaintiff's allegations fail to support the inference that "at least one direct infringer exists." Bill of Lading, 681 F.3d at 1336.

In sum, plaintiff has failed to adequately plead that defendant has indirectly infringed plaintiff's asserted patents, and plaintiff's claims for indirect infringement are dismissed without prejudice.

3. Leave to Amend

Because plaintiff's claims are dismissed without prejudice, plaintiff is allowed a 21 day period of time to seek leave to file an amended complaint. See Goode v. Cent. Va. Legal Aid Soc'y, Inc., 807 F.3d 619, 623 (4th Cir. 2015). In the event plaintiff fails to move for leave to amend complaint within 21 days of the date of this order, the clerk is DIRECTED to close this case without further order of this court.

**CONCLUSION**

Based on the foregoing, defendant's motion to dismiss (DE 23) is GRANTED. Plaintiff's

claims are DISMISSED WITHOUT PREJUDICE for failure to state a claim. Plaintiff is allowed a 21 day period of time, from the date of this order, to seek leave to file an amended complaint. In the event plaintiff fails to move for leave to amend complaint within 21 days of the date of this order, the clerk is DIRECTED to close this case without further order of this court.

SO ORDERED, this the 14th day of January, 2019.

LOUISE W. FLANAGAN
United States District Judge