**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| PANDUIT CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 5:18-CV-229-FL |
| CORNING INCORPORATED, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

<u>**PLAINTIFF PANDUIT CORP.'S OPENING CLAIM CONSTRUCTION BRIEF**</u>
<u>**PURSUANT TO LOCAL PATENT RULE 304.5(a)**</u>

# TABLE OF CONTENTS

I.    INTRODUCTION & QUESTIONS PRESENTED ........................................................ 1

II.   BACKGROUND ................................................................................................ 3

    A.    Procedural Background at the District Court ........................................... 3

    B.    Procedural Background at the PTAB ..................................................... 4

    C.    Technical Background ......................................................................... 5

III.  LEGAL STANDARDS ...................................................................................... 7

    A.    Principles of Fairness and Estoppel Prevent a Party from Advocating Different Claim Constructions at the PTAB and District Court ................................. 7

    B.    General Principles of Claim Construction ............................................. 8

    C.    Departure from the Plain and Ordinary Meaning of a Claim Term is Appropriate in Only Two Limited Circumstances ....................................... 11

    D.    There is No Requirement to Construe Terms Beyond their Presumed Plain and Ordinary Meaning .............................................................................. 12

    E.    Method Claims are Presumed to Not Be Limited to the Order They are Written . 13

IV.   ARGUMENT ................................................................................................. 14

    A.    Principles of Fairness and Estoppel Preclude Corning from Changing its Prior Claim Construction Positions ............................................................... 14

        1.    Corning is Asserting Positions Here that are Clearly Inconsistent with Positions it Took at the PTAB ................................................. 14

        2.    The PTAB Accepted Corning's Argument that the "Plain and Ordinary Meaning" Applies and No Construction is Necessary .............................. 16

        3.    Allowing Corning to Switch Arguments and Now Advocate for Narrow Constructions Here Would Provide an Unfair Advantage ........................ 17

    B.    There is No Reason to Reject the Governing Presumption that Method Claims are Not Limited to their Recited Order ....................................................... 18

    C.    There is No Support or Basis for Importing Extraneous Limitations into "Choosing for Use" ......................................................................... 19

    D.    If a Construction of "Choosing for Use" is Required, it Should be the One Supported by the Specification ............................................................ 21

V.    CONCLUSION ............................................................................................... 22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Innovative Props. Co. v. Tredegar Corp.*,
725 F.3d 1315 (Fed. Cir. 2013).............................................................................11, 20

*ActiveVideo Networks, Inc. v. Verizon Communs., Inc.*,
694 F.3d 1312 (Fed. Cir. 2012).....................................................................................13

*Alloc, Inc. v. Int'l Trade Comm'n*,
342 F.3d 1361 (Fed. Cir. 2003)........................................................................................9

*Altiris, Inc. v. Symantec Corp.*,
318 F.3d 1363 (Fed. Cir. 2003)...............................................................13, 14, 18, 19

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014)........................................................................................9

*Athletic Alternatives, Inc. v. Prince Mfg.*,
73 F.3d 1573 (Fed. Cir. 1996)........................................................................................10

*Avid Tech., Inc. v. Harmonic, Inc.*,
812 F.3d 1040 (Fed. Cir. 2016)......................................................................................12

*Azure Networks, LLC v. CSR PLC*,
771 F.3d 1336 (Fed. Cir. 2014) (vacated on other grounds)........................................9

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
512 F.3d 1338 (Fed. Cir. 2008)...............................................................................13, 18

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*,
262 F.3d 1258 (Fed. Cir. 2001)........................................................................................8

*C.R. Bard, Inc. v. U.S. Surgical Corp.*,
388 F.3d 858 (Fed. Cir. 2004)...............................................................................8, 9, 11

*Comark Commc'ns, Inc. v. Harris Corp.*,
156 F.3d 1182 (Fed. Cir. 1998)......................................................................................10

*Constant v. Advanced Micro-Devices, Inc.*,
848 F.2d 1560 (Fed. Cir. 1988)......................................................................................10

*Cordis Corp. v. Boston Sci. Corp.*,
561 F.3d 1319 (Fed. Cir. 2009)...............................................................................11, 20

ii

*Elbex Video, Ltd. v. Sensormatic Electronics Corp.*,
508 F.3d 1366 (Fed. Cir. 2007)...................................................................9

*Galderma Labs., L.P. v. Amneal Pharm. LLC*,
806 F. App'x 1007 (Fed. Cir. 2020) ...........................................................12

*GE Lighting Solutions, LLC v. AgiLight, Inc.*,
750 F.3d 1304 (Fed. Cir. 2014)...........................................................11, 20

*Golden Bridge Tech., Inc. v. Apple Inc.*,
758 F.3d 1362 (Fed. Cir. 2014)..................................................................11

*In re Hiniker Co.*,
150 F.3d 1362 (Fed. Cir. 1998)....................................................................9

*Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*,
381 F.3d 1111 (Fed. Cir. 2004)....................................................................8

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
256 F.3d 1323 (Fed. Cir. 2001)...........................................................13, 18

*King v. Herbert J. Thomas Mem'l Hosp.*,
159 F.3d 192 (4th Cir. 1998) .......................................................................7

*Krausz Indus. v. Smith-Blair, Inc.*,
122 F. Supp. 3d 381 (E.D.N.C. 2015) (Flanagan, J.)..................................13

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004).....................................................................10

*Lowery v. Stovall*,
92 F.3d 219 (4th Cir. 1996) ..........................................................................7

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) (*en banc*) ...................................................10

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008)...................................................................12

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ...............................8, 9, 10, 11

*Ramot at Tel Aviv Univ. Ltd. v. Cisco Sys.*,
No. 2:19-cv-00225-JRG, 2020 U.S. Dist. LEXIS 85561 (E.D. Tex. May 15,
2020) .....................................................................................................8, 15, 16

*Renishaw PLC v. Marposs Societa'*,
158 F.3d 1243 (Fed. Cir. 1998)..............................................................9, 11

*Research Frontiers, Inc. v. E Ink Corp.*,
No. 13-1231-LPS, 2016 WL 1169580 (D. Del. Mar. 24, 2016)............................................17

*Summit 6, LLC v. Samsung Elecs. Co.*,
802 F.3d 1283(Fed. Cir. 2015)..................................................................................12

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
299 F.3d 1313 (Fed. Cir. 2002)................................................................................10

*Thorner v. Sony Computer Entm't Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012)................................................................................11

*Trs. in Bankr. of N Am. Rubber Thread Co., Inc. v. United States*,
593 F.3d 1346 (Fed. Cir. 2010)...................................................................................7

*Trs. of Columbia Univ. in N.Y. v. NortonLifeLock, Inc.*,
Civil Action No. 3:13cv808, 2019 U.S. Dist. LEXIS 220072 (E.D. Va. Dec.
20, 2019)...............................................................................................8, 15, 17

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed. Cir. 1996)..................................................................................10

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
200 F.3d 795 (Fed. Cir. 1999).............................................................................4, 16

**Statutes**

35 U.S.C. § 282(b) .......................................................................................4, 15, 16

**Other Authorities**

37 C.F.R. § 42.100(b) (Nov. 13, 2018) ...............................................................4, 15, 16

# I.     INTRODUCTION & QUESTIONS PRESENTED

In this case, Corning has proposed two claim construction issues for the two patents in suit.

The parties' proposals are below:

| Claim Term | Panduit's Proposed Construction | Corning's Proposed Construction |
|---|---|---|
| Step Order | Consistent with the position that Corning took before the Patent Trial and Appeal Board ("PTAB") in its petition for *inter partes* review of the Patents-in-Suit, Panduit contends that the claims of the Patents-in-Suit are not necessarily limited to the particular stepwise order as written in the claims. | The three method steps must be performed in the recited order. |
| "Choosing for use in [a / the] communications network" | Consistent with the position that Corning took before the PTAB in its petition for *inter partes* review of the Patents-in-Suit, Panduit contends that the plain and ordinary meaning applies to this term and no additional construction is necessary or warranted.<br><br>However, if the Court determines that a construction is required, Panduit proposes the following:<br><br>"selecting optical fiber, sorting optical fiber, or verifying optical fiber performance."[1] | Plain and ordinary meaning, *i.e.*: "determining that the measured fiber will be used in a given communications network" |

(DE 61-1 at 1, 11-12).

The two claim construction issues proposed by Corning here are simple, and were, in fact,

already decided nearly a year ago by the Patent Trial and Appeals Board ("PTAB")—on *Corning's*

---

[1] In the interest of narrowing the claim construction dispute, Panduit notified Corning that it has streamlined its proposed alternative construction for "choosing for use in [a / the] communications network" as follows (omitted language shown in strikethrough): "selecting optical fiber, sorting optical fiber, ~~designing optical fiber,~~ or verifying optical fiber performance~~, including for the purpose of designing or selecting optical fiber cables.~~" Panduit's primary claim construction position, which is that the plain and ordinary meaning applies to this term and no additional construction is necessary or warranted, remains unchanged.

1

petition, and adopting *Corning's* proposed constructions of these very issues.

At the PTAB, where Corning unsuccessfully sought to invalidate all claims of both patents, Corning proposed that no construction was necessary for either of these issues and that they should be given their plain and ordinary meaning: "Petitioner contends that the plain and ordinary meaning applies to each of the terms in the claims of the '115 Patent."[2]  Ex. 4, Corning's '115 Patent IPR Petition, at 14.  Though the PTAB ultimately denied Corning's petitions for *inter partes* review of both patents, it adopted Corning's position that plain and ordinary meaning applies and no construction of any terms—including the two presented here—is necessary: "[W]e construe the claim in accordance with the ordinary and customary meaning of such claim as understood by one of ordinary skill in the art and the prosecution history pertaining to the patent. … Neither [Corning] nor [Panduit] propose that we construe any terms or phrases. We determine that no claim term requires express construction for purposes of this decision."  Ex. 5, PTAB Decision Denying Institution of IPR of '115 Patent, at 6-7 added); *see also* Ex. 7, PTAB Decision Denying Institution of IPR of '027 Patent, at 6-7.

Having failed in its bid to invalidate the patents under their plain and ordinary meaning, Corning reverses course and now asks this Court to adopt unduly narrow constructions so that Corning can attempt to avoid infringement.  Even if principles of fairness and estoppel did not preclude Corning's Janus-faced approach to claim construction—and plainly they do—the Court should still reject Corning's attempts to improperly and incorrectly narrow the claims.

Instead, consistent with the position advocated by Corning and adopted by the PTAB in

---

[2] In its petition for *inter partes review* of the '027 Patent, Corning proposed a construction for "peak delay," a term not proposed for construction in this case.  Ex. 6, Corning's '027 Patent IPR Petition, at 14-15.  The PTAB declined to construe that term, along with the other claim terms. Ex. 7, PTAB Decision Denying Institution of IPR of '027 Patent, at 6-7.

2

the IPR proceedings, the Court should find that the "plain and ordinary meaning" applies and no construction is necessary. If, however, the Court believes that a construction of "choosing for use in [a / the] communications network" is necessary, then it should be the construction that is taught by the specification "selecting optical fiber, sorting optical fiber or verifying optical fiber performance."

## II.    BACKGROUND

### A.    Procedural Background at the District Court

On February 7, 2018, Panduit filed its original Complaint against Corning for infringement of U.S. Patent Nos. 8,351,027 ("the '027 patent") and 8,488,115 ("the '115 patent") (collectively, the "patents-in-suit"). (DE 1, ¶¶ 8-9, 18-28, 30-40). On May 23, 2018, over three months after the initial Complaint was filed, Corning filed a motion to dismiss the initial Complaint. (DE 23). The Court granted Corning's Motion on January 14, 2019, dismissing the initial Complaint without prejudice and providing Panduit with 21 days to seek leave to file an amended complaint. (DE 36). On February 4, 2019, Panduit sought leave to file an amended complaint. This leave was granted on February 21, 2019, and on that same day Panduit filed its First Amended Complaint (DE 43, "FAC").

In March 2019, Corning filed a second motion to dismiss, (DE 45), and also filed petitions for *inter partes* review of the patents in suit. Ex. 4, Corning's '115 Patent IPR Petition; Ex. 6, Corning's '027 Patent IPR Petition. The PTAB denied both of Corning's petitions in September 2019. Ex. 5, PTAB Decision Denying Institution of IPR of '115 Patent; Ex. 7, PTAB Decision Denying Institution of IPR of '027 Patent. And the Court denied Corning's second motion to dismiss in November 2019. (DE 49). Finally, nearly two years after the suit was filed, Corning answered Panduit's complaint in January 2020. (DE 53).

3

**B. Procedural Background at the PTAB**

As noted in the previous sub-section, Corning filed petitions for *inter partes* review of both patents in suit. Ex. 4, Corning's '115 Patent IPR Petition; Ex. 6, Corning's '027 Patent IPR Petition. In the claim construction portion of its petitions, Corning acknowledged that the PTAB and this Court share the same claim construction standards, proposed that no construction was necessary and advocated that the "plain and ordinary meaning" applies:

> The challenged claims of the '027 [sic, '115] Patent are construed herein "using the same claim construction standard that would be used to construe the claim in a civil action under 35 U.S.C. § 282(b)." 37 C.F.R. § 42.100(b) (Nov. 13, 2018). The claim terms are thus construed "in accordance with the ordinary and customary meaning of such claim as understood by one of ordinary skill in the art and the prosecution history pertaining to the patent." *Id.* **Petitioner contends that the plain and ordinary meaning applies to each of the terms in the claims of the '115 Patent**.

Ex. 4 at 14 (emphasis added).[3] And, in reliance on this statement, the PTAB adopted Corning's proposal that the plain and ordinary meaning applies and no construction is necessary:

> We interpret a claim "using the same claim construction standard that would be used to construe the claim in a civil action under 35 U.S.C. 282(b)." 37 C.F.R. § 42.100(b) (2018). Under this standard, we construe the claim "in accordance with **the ordinary and customary meaning** of such claim as understood by one of ordinary skill in the art and the prosecution history pertaining to the patent." *Id.* . . . **Neither Petitioner nor Patent Owner propose that we construe any terms or phrases. Pet. 14**; Prelim. Resp. 9–10. **We determine that no claim term requires express construction for purposes of this decision.** *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy.").

Ex. 5, PTAB Decision Denying Institution of IPR of '115 Patent, at 6-7 (footnote omitted, emphasis added); *see also* Ex. 7, PTAB Decision Denying Institution of IPR of '027 Patent, at 6-7. Despite adopting Corning's claim construction proposal, the PTAB nonetheless determined that Corning had failed to demonstrate a reasonable likelihood of prevailing and denied institution

---

[3] *See* Footnote 2, *supra*.

4

proceedings regarding either the '027 or '115 Patents. *See,* Ex. 5 at 30; Ex. 7 at 33.

### C.    Technical Background

Both the '027 and '115 Patents relate to innovative methods using new and useful techniques for selecting multimode optical fiber based on measurement and evaluation of certain characteristics that Panduit has discovered are indicative of superior-performing multimode fiber. (FAC, ¶¶ 10-12). More specifically, Panduit has found that multimode optical fibers exhibiting a negative "DMD Shift"—a new metric that Panduit discovered—are superior in terms of minimizing Bit Error Rate ("BER"), which is a measurement of errors, and therefore maximizing multimode fiber bandwidth performance at greater distances. Ex 2, '027 Patent at 1:23-26, 2:52-59.[4] As the patents explain:

> A new metric "DMD Shift" is derived from a [Differential Mode Delay (DMD)] measurement. The DMD shift can be used as a scaling factor for industry-standard EMB and DMD metrics to yield a more accurate prediction of a multimode fiber's Bit Error Rate (BER) channel link performance. The metric can be related to the refractive index profile in MMF and can, therefore, be used to optimize the design of MMF to achieve improved performance.

*Id.* at 2:52-59. These DMD measurements are typically done in the factory when the fiber is being created using specific testing equipment, which may include standalone instruments (such as a sampling oscilloscope), test benches and/or computers. (FAC, ¶ 14). Corning concedes in its Answer that it measures DMD at the factory using various testing equipment (DE 53, ¶ 14) and that it tests and verifies the optical performance of its fiber after it is drawn (*Id.* at ¶ 19).

The '027 and '115 Patents are directed to the methods for using the different DMD Shift measurements to select high-performing multimode optical fiber. *Id.* at 3:1-8. The DMD Shift is

---

[4] Both patents share a nearly identical specification. Unless stated otherwise, Panduit will cite to only the '027 Patent specification. The '115 Patent is attached for the Court's convenience as Ex. 3.

5

determined using the difference in, for example, pulse delays between different waveforms and will either be positive, *i.e.*, shifted to the right, or negative, *i.e.*, shifted to the left. *Id.* at 4:16-22.

The '027 and '115 Patents disclose selection of multimode optical fiber exhibiting a "left," or negative, DMD Shift. An exemplary claim from the '027 patent is below:

> 1. A method for selecting multimode optical fiber for use in a communications network comprising:
>
> measuring the peak delay for pulses traveling through different radii of a number of multimode optical fibers;
>
> subtracting the peak delay at a first radius of each multimode optical fiber from the peak delay at a second, larger radius of each multimode fiber; and
>
> **choosing for use in a communications network** those optical fibers in which the result of subtracting the peak delay at the first radius from the peak delay at the second radius is a negative number.

*Id.* at Claim 1 (language proposed for construction by Corning shown in bold).[5]

According to the patents, this evaluation for negative DMD shift is used to select multimode fiber, sort multimode fiber, or verify multimode fiber performance:

> When implemented as a test algorithm in production, [DMD Shift] **can be used to select fiber, sort fiber, or verify fiber performance**. MMF compliant with this new metric will result in higher BER system performance for a given cable length, or allows a greater cable length for a given BER system performance.

*Id.* at 2:59-64 (emphasis added); *see also id.* at Abstract ("When implemented as a test algorithm in production, it can be used to select, sort, or verify fiber performance. This process can yield a multimode fiber design with a greater performance margin for a given length, and/or a greater length for a given performance margin.").

---

[5] For purposes of evaluating the two disputed claim construction issues, independent claim 1 of both the '027 and '115 are sufficiently similar. Dependent claims 2-4 of both patents necessarily include all limitations of claim 1 of each patent and, therefore, the Court's construction of the two disputed issues will impact all four claims in both patents.

6

# III.     LEGAL STANDARDS

## A.     Principles of Fairness and Estoppel Prevent a Party from Advocating Different Claim Constructions at the PTAB and District Court

The equitable doctrine of judicial estoppel protects the integrity of the judicial system by preventing a party who has successfully taken a position in once proceeding from taking an inconsistent position in a subsequent proceeding. *King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998) (citing *Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996)). The Fourth Circuit applies a three-element test for judicial estoppel: "(1) The party to be estopped must be asserting a position that is factually incompatible with a position taken in a prior judicial or administrative proceeding; (2) the prior inconsistent position must have been accepted by the tribunal; and (3) the party to be estopped must have taken inconsistent positions intentionally for the purpose of gaining unfair advantage." *King*, 159 F.3d at 196. The Federal Circuit applies a similar three-factor test. *See Trs. in Bankr. of N Am. Rubber Thread Co., Inc. v. United States*, 593 F.3d 1346, 1354 (Fed. Cir. 2010).

Courts in the Fourth Circuit applying the Federal Circuit's articulation of the factors have found judicial estoppel to attach in the context of an accused infringer who advocated for a "plain meaning" claim construction in the context of an IPR proceeding because: (1) arguing for a "plain meaning" construction at the PTAB is "clearly inconsistent" with arguing for a narrower construction at the district court; (2) when the PTAB applies the broad "plain meaning" of a term or the corollary "not necessary to construe," which increases the probability of invalidity, these tribunals are deemed to have accepted the accused infringer's claim construction position that no limits should be read into the claims, *i.e.*, the plain and ordinary meaning applies; and (3) allowing the accused infringer to argue for and obtain a "plain meaning" definition of a phrase at the PTAB, when a "plain meaning" definition would more likely result in a finding of invalidity, and then

7

argue for a narrower definition at the district court, which would narrow the possibility of infringement, would result in an unfair advantage. *Trs. of Columbia Univ. in N.Y. v. NortonLifeLock, Inc.*, Civil Action No. 3:13cv808, 2019 U.S. Dist. LEXIS 220072, at *10-14 (E.D. Va. Dec. 20, 2019).

Other district courts have similarly found that estoppel attaches when an accused infringer "affirmatively present[s] 'plain and ordinary meaning' as the proper construction" but then attempts to ascribe a narrower constriction at the district court. *Ramot at Tel Aviv Univ. Ltd. v. Cisco Sys.*, No. 2:19-cv-00225-JRG, 2020 U.S. Dist. LEXIS 85561, at *34-36 (E.D. Tex. May 15, 2020) ("Defendant, in its IPR petition, expressly recognized that 'pulse modulation' has a broad customary meaning and is not limited to RZ format in the patents . … Defendant's explanation of the inconsistency between its position before the PTAB and its position before the Court is not credible. Notably, Defendant did not simply argue to the PTAB that a construction of 'pulse modulated' is unnecessary to resolve the invalidity dispute presented in the IPR. Rather, Defendant affirmatively presented "plain and ordinary meaning" as the proper construction . … Defendant's nose-of-wax approach to claim construction is not justified. Accordingly, the Court rejects Defendant's proposed construction and determines that 'pulse modulated' has its plain and ordinary meaning without the need for further construction.")

### B. General Principles of Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, courts start by considering the intrinsic evidence. *Id*. at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d

1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1314; *C.R. Bard*, 388 F.3d at 861.

The general rule—subject only to certain specific exceptions discussed below—is that each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent. *Phillips*, 415 F.3d at 1312-13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003). To be clear, "[t]here is a **heavy presumption** that claim terms carry their accustomed meaning in the relevant community at the relevant time." *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) (vacated on other grounds); *Elbex Video, Ltd. v. Sensormatic Electronics Corp.*, 508 F.3d 1366, 1371 (Fed. Cir. 2007) ("Claim terms are entitled to a 'heavy presumption' that they carry their ordinary and customary meaning."); *see also Phillips*, 415 F.3d at 1313 (collecting cases).

"The claim construction inquiry . . . begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). "[I]n all aspects of claim construction, 'the name of the game is the claim.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)). First, a term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314-15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting

9

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1318; *see also Athletic Alternatives, Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at

1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* at 1318.

### C. Departure from the Plain and Ordinary Meaning of a Claim Term is Appropriate in Only Two Limited Circumstances

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)); *see also GE Lighting Solutions, LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and disavowal."). The standards for finding lexicography or disavowal are "exacting." *GE Lighting Solutions*, 750 F.3d at 1309.

To act as their own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.* (quoting *Thorner*, 669 F.3d at 1365); *see also Renishaw*, 158 F.3d at 1249. The patentee's lexicography must appear "with reasonable clarity, deliberateness, and precision." *Renishaw*, 158 F.3d at 1249.

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M*

*Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013); *see also Avid Tech., Inc. v. Harmonic, Inc.*, 812 F.3d 1040, 1045 (Fed. Cir. 2016) ("[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable. Where the alleged disavowal is ambiguous, or even amenable to multiple reasonable interpretations, we have declined to find prosecution disclaimer.") (citations and internal quotation marks omitted).

Similarly, statements by a patent owner during an IPR proceeding if they are "clear and unmistakable" and even then, only if they were accepted by the PTAB. *Galderma Labs., L.P. v. Amneal Pharm. LLC*, 806 F. App'x 1007, 1010-11 (Fed. Cir. 2020) ("[S]tatements made by a patent owner during an IPR proceeding can be considered during claim construction and relied upon to support a finding of prosecution disclaimer so long as the statements are both clear and unmistakable. … Statements by the patent owner are not considered in a vacuum; rather, the skilled artisan would look at the record as a whole in assessing claim scope. … While clear and limiting statements made by the patent owner can give rise to disclaimer, they do not in this case where those statements were clearly and expressly rejected by the Patent Office.") (internal quotations and citations omitted).

### D. There is No Requirement to Construe Terms Beyond their Presumed Plain and Ordinary Meaning

Consistent with the "heavy presumption" of plain and ordinary meaning, it is also bedrock law that not every patent term requires construction. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims."); *see also Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291(Fed. Cir. 2015) ("At the claim construction stage, the district court rejected Samsung's argument that ongoing activity is required—the heart of the

parties' disagreement—and declined to further construe the term because it was a 'straightforward term' that required no construction. … Because the plain and ordinary meaning of the disputed claim language is clear, the district court did not err by declining to construe the claim term."); *ActiveVideo Networks, Inc. v. Verizon Communs., Inc.*, 694 F.3d 1312, 1325-26 (Fed. Cir. 2012) ("The district court did not err in concluding that these terms have plain meanings that do not require additional construction. ActiveVideo's proposed construction erroneously reads limitations into the claims and the district court properly rejected that construction and resolved the dispute between the parties."); *Krausz Indus. v. Smith-Blair, Inc.*, 122 F. Supp. 3d 381, 396 (E.D.N.C. 2015) (Flanagan, J.) ("The term readily is understood by its plain language and context within the claim. ... Therefore, the court declines to construe the term.").

### E. Method Claims are Presumed to Not Be Limited to the Order They are Written

"[A]lthough a method claim necessarily recites the steps of the method in a particular order, as a general rule the claim is not limited to performance of the steps in the order recited, unless the claim explicitly or implicitly requires a specific order." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1345 (Fed. Cir. 2008) (citing *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1342-43 (Fed. Cir. 2001)); *Interactive Gift*, 256 F.3d at 1342 ("Unless the steps of a method actually recite an order, the steps are not ordinarily construed to require one.") (citation omitted).

"*Interactive Gift* recites a two-part test for determining if the steps of a method claim that do not otherwise recite an order, must nonetheless be performed in the order in which they are written." *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1369 (Fed. Cir. 2003). "First, we look to the claim language to determine if, as a matter of logic or grammar, they must be performed in the order written." *Id.* (citing *Interactive Gift*, 256 F.3d at 1343). Second, "we next look to the

13

rest of the specification to determine whether it directly or implicitly requires such a narrow construction." *Id.* at 1370 (internal quotation and citation omitted). If neither of these requirements are met, "the sequence in which such steps are written is not a requirement." *Id.*

## IV.    ARGUMENT

### A.    Principles of Fairness and Estoppel Preclude Corning from Changing its Prior Claim Construction Positions

As mentioned at the beginning of this paper, the two claim construction issues proposed by Corning here are simple, and were, in fact, already decided nearly a year ago by the PTAB— on *Corning's* petition, and adopting *Corning's* proposed constructions of these very issues. In summary, this is a cut-and-dried case of judicial estoppel: (1) Corning advocated to the PTAB that no construction of these issues is necessary and they should be accorded their plain and ordinary meaning; (2) the PTAB adopted Corning's proposal and ruled that no construction of the claims was necessary and they should be accorded their plain and ordinary meaning; and (3) it would be unfair to allow Corning, having successfully advocated for a broad construction in the context of invalidity, to now advocate narrow constructions in hopes of avoiding infringement. Therefore, the Court should reject both of Corning's claim construction arguments, hold that the claims are not necessarily limited to their recited order, and hold that the term "choosing for use in [a/the] communications network" requires no construction and should have its plain and ordinary meaning.

The Fourth Circuit's three-element test, as well as similar elements articulated by other courts, confirm that this is the correct result.

### 1.    Corning is Asserting Positions Here that are Clearly Inconsistent with Positions it Took at the PTAB

At the PTAB, where Corning sought to invalidate all claims of both patents in suit, Corning proposed that no construction was necessary and the "plain and ordinary meaning" applies:

14

The challenged claims of the '027 [sic, '115] Patent are construed herein "using the same claim construction standard that would be used to construe the claim in a civil action under 35 U.S.C. § 282(b)." 37 C.F.R. § 42.100(b) (Nov. 13, 2018). The claim terms are thus construed "in accordance with the ordinary and customary meaning of such claim as understood by one of ordinary skill in the art and the prosecution history pertaining to the patent." *Id*. **Petitioner contends that the plain and ordinary meaning applies to each of the terms in the claims of the '115 Patent**.

*See, e.g.* Ex. 4, Corning's '115 Patent IPR Petition, at 14 (emphasis added).[6]

Having failed to invalidate the claims at the PTAB, Corning shifts its focus here to attempting to avoid infringement, and therefore advocates for unduly-narrow constructions. To wit, Corning asserts (1) the claims are strictly-limited to being performed in only the order they are written and (2) the term "choosing for use in [a/the] communications network" should be unduly limited to "determining that the measured fiber will be used in a given communications network." (DE 61-1 at 1, 11). Though both of these constructions are intrinsically flawed, and may be rejected in their own right for the reasons set forth below, judicial estoppel precludes Corning from advancing them, and the Court may therefore reject them on that basis alone.

A sister district court in the Fourth Circuit found an accused infringer's prior position was "clearly inconsistent" when it argued for a broad construction at the PTAB and before the Federal Circuit (on appeal of the PTABs' decisions)—"when its interests seemingly aligned with a broad definition of the term (because it increased the probability of invalidity)"—and then argued a narrower construction before the district court, "thereby narrowing the possibility of infringement." *Trs. of Columbia Univ.*, 2019 U.S. Dist. LEXIS 220072, at **11-13; *see also Ramot*, 2020 U.S. Dist. LEXIS 85561, at *34-36 (finding inconsistency when the accused infringer "affirmatively presented 'plain and ordinary meaning' as the proper construction" at the PTAB

---

[6] *See* Footnote 2, *supra*.

and then proposed narrowed constructions at the district court).

> **2.    The PTAB Accepted Corning's Argument that the "Plain and Ordinary Meaning" Applies and No Construction is Necessary**

In reliance on Corning's argument that the "plain and ordinary meaning" applies and no construction is necessary, the PTAB found:

> We interpret a claim "using the same claim construction standard that would be used to construe the claim in a civil action under 35 U.S.C. 282(b)." 37 C.F.R. § 42.100(b) (2018). Under this standard, we construe the claim "in accordance with **the ordinary and customary meaning** of such claim as understood by one of ordinary skill in the art and the prosecution history pertaining to the patent." *Id. . . .* **Neither Petitioner nor Patent Owner propose that we construe any terms or phrases. Pet. 14**; Prelim. Resp. 9–10. **We determine that no claim term requires express construction for purposes of this decision**. *See Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("[O]nly those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy.").

Ex.5, PTAB Decision Denying Institution of IPR of '115 Patent, at 6-7 (footnote omitted, emphasis added); *see also* Ex. 6, PTAB Decision Denying Institution of IPR of '027 Patent, at 6-7.

By ruling "in accordance with the ordinary and customary meaning" that "no claim terms require express construction," the PTAB adopted Corning's argument. *See Ramot*, 2020 U.S. Dist. LEXIS 85561, at *35-36 ("Defendant's explanation of the inconsistency between its position before the PTAB and its position before the Court is not credible. Notably, Defendant did not simply argue to the PTAB that a construction of 'pulse modulated' is unnecessary to resolve the invalidity dispute presented in the IPR. Rather, Defendant affirmatively presented 'plain and ordinary meaning' as the proper construction …. Accordingly, the Court rejects Defendant's proposed construction and determines that 'pulse modulated' has its plain and ordinary meaning without the need for further construction.").

Similarly, the *Columbia University* court found that the accused infringer "succeeded in arguing for a broad construction of the disputed phrase before the PTAB and the Federal Circuit, which meets the second factor of the judicial estoppel test" where the accused infringer argued

16

before both tribunals that no limits should be read into the claims, *i.e.*, the plain and ordinary meaning applies, and the PTAB "applied the plain meaning of the term" and found that found "'it was not necessary to construe' the disputed term." *Trs. of Columbia Univ.*, 2019 U.S. Dist. LEXIS 220072, at **11-13.

### 3. Allowing Corning to Switch Arguments and Now Advocate for Narrow Constructions Here Would Provide an Unfair Advantage

It is perhaps axiomatic that it would be unfair to allow Corning, having successfully advocated for a broad construction in the context of invalidity, to now advocate narrow constructions in hopes of avoiding infringement. Indeed, other courts have found unfairness in this identical situation:

> Finally, allowing Norton to take a position before this Court so contrary to that it took before the PTAB and the Federal Circuit would result in Norton having an unfair advantage in this litigation. Norton argued for —and obtained—a broad construction of the disputed phrase when a broad definition would likely result in the PTAB finding more patent claims invalid in light of the prior art. Now that its interests have changed as this Court considers infringement, Norton requests a narrow definition of the term, thereby narrowing the possibility of infringement. Allowing such a change in position would result in Norton having an "unfair advantage" in this litigation.

*Trs. of Columbia Univ.*, 2019 U.S. Dist. LEXIS 220072, at *13.

Therefore, because each of the three judicial estoppel elements are met, the Court should reject Corning's attempts to advocate different, narrower, constructions here. In that case, the Court should make the same ruling on both disputed claim issues as the PTAB did: plain and ordinary meaning applies, and no construction is necessary.[7]

---

[7] If, however, the Court finds that estoppel does not attach, then Corning's prior positions are at least relevant to the Court's consideration of the claim construction issues. *See Research Frontiers, Inc. v. E Ink Corp.*, No. 13-1231-LPS, 2016 WL 1169580, at *3 n.4 (D. Del. Mar. 24, 2016), report and recommendation adopted in 2016 WL 7217217 (D. Del. Dec. 13, 2016) (finding no estoppel under the old, "BRI" standard for PTAB claim construction—which is **not** applicable and **not** a point of distinction here—and yet still concluding "With all of that said, the fact that E Ink took certain claim construction positions during the IPR proceeding may well be

**B.** **There is No Reason to Reject the Governing Presumption that Method Claims are Not Limited to their Recited Order**

First, for the reasons articulated above, Corning is estopped from arguing that the claims are strictly limited to the order recited, because it successfully argued to the PTAB that no such limit should apply. *See supra*.

Estoppel aside, Corning's argument should additionally be rejected because there is no evidence rebutting the governing presumption that method claims are not limited to the order in which they are written. *See Baldwin Graphic Sys.*, 512 F.3d at 1345 ("[A]lthough a method claim necessarily recites the steps of the method in a particular order, as a general rule the claim is not limited to performance of the steps in the order recited, unless the claim explicitly or implicitly requires a specific order.")

Neither of the *Interactive Gift* requirements to rebut the presumption are present. *See Interactive Gift*, 256 F.3d at 1343; *see also Altiris*, 318 F.3d at 1369-70. First, looking at the claim language, there is no logical or grammatical reason the claims must be performed in the recited order. *See id.* Claim 1 of the '027 patent is exemplary:

> 1.  A method for selecting multimode optical fiber for use in a communications network comprising:
>
> measuring the peak delay for pulses traveling through different radii of a number of multimode optical fibers;
>
> subtracting the peak delay at a first radius of each multimode optical fiber from the peak delay at a second, larger radius of each multimode fiber; and
>
> choosing for use in a communications network those optical fibers in which the result of subtracting the peak delay at the first radius from the peak delay at the second radius is a negative number.

Ex 2, '027 Patent at Claim 1. The elements of the claim could be performed in a different order

_____

relevant to the Court in resolving claim construction disputes here…").

18

than expressly written. For example, the "choosing for use in a communications network" step could be done first, and then the steps of "measuring" and "subtracting" could be done, for example, to verify the "choosing" step. Indeed, the patent expressly contemplates that the claimed method can be an iterative and repeating loop and when "implemented as a test algorithm in production, it can be used to select fiber, sort fiber, or verify fiber performance." *Id.* at 2:59-61.

Second, none of the specification passages that Corning cited in its disclosure of supporting evidence "directly or implicitly requires such a narrow construction." *Altiris*, 318 F.3d at 1370. None of the cited passages directly or implicitly mandate that, for example, the "choosing for use in a communications network" step could not be done before the steps of "measuring" or "subtracting." (*See* DE 61-1 at 1-2 (listing Corning's cited supporting specification passages)).

Thus, because neither of the *Interactive Gift* requirements are met, "the sequence in which [the claim] steps are written is not a requirement," and Corning's construction should be rejected. *Altiris*, 318 F.3d at 1370.

## C. There is No Support or Basis for Importing Extraneous Limitations into "Choosing for Use"

Once again, for the reasons articulated above, Corning is estopped from arguing a limited construction for "choosing for use in [a/the] communications network," because it successfully argued to the PTAB that no construction for this term (or any other term) is necessary and the "plain and ordinary meaning applies" for this term.[8] *See supra.*

But once again setting estoppel aside, Corning's attempt to graft unwarranted and

─────────────────

[8] In apparent recognition that its new construction is inconsistent with the positions it took at the PTAB, Corning grafted a prefix onto its proposed construction, "Plain and ordinary meaning, *i.e.*:," on the day the parties' Joint Rule 304.3 chart was due to be filed. *See* DE 61-1 at 11. Not only was Corning's amendment outside the timeframe provided by Rule 304.2, but it exposes Corning's weak footing here and underscores the inconsistency between its current positions and its prior positions. Estoppel clearly attaches.

19

unsupported limitations into the claims should be rejected. As noted above, the "heavy presumption" that "choosing for use in [a/the] communications network," has any meaning other than the "plain and ordinary meaning" (which again, is the construction that Corning previously advocated and the one the Court should apply here) may only be rebutted in two limited circumstances: lexicography or disavowal. *See Golden Bridge, et al., supra.*

None of the specific passages that Corning points to evidence lexicography, let alone the bizarre construction Corning proposes: "determining that the measured fiber will be used in a given communications network." (*See* DE 61-1 at 11 (listing Corning's cited supporting specification passages)). To act as their own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *GE Lighting Solutions*, 750 F.3d at 1309. Corning has pointed to no such clear definition by the patentee. In fact, Corning's definition seemingly finds no support anywhere in the specification. Corning seeks to insert, without any support whatsoever, the concepts of "the measured fiber" and "a given communications network," which are not defined and would themselves cause future claim construction disputes. They should not be imported

Nor is there any disavowal. Disavowal results only from statements in the specification or prosecution history that amount to a "clear and unmistakable" surrender. *Cordis*, 561 F.3d at 1329. And where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative*, 725 F.3d at 1326. None of the specification and prosecution history passages that Corning cites amount to "clear and unmistakable" surrender, nor does Corning point to statements that if they were "surrender" (and to be clear, they are not), they are not amenable to multiple reasonable interpretations.

Finally, it is worth repeating the bedrock claim construction principle that, consistent with

the "heavy presumption" of plain and ordinary meaning, not every patent term requires construction—*particularly* when the proposed construction would improperly and erroneously read limitations into the claims. *ActiveVideo*, 694 F.3d at 1325-26 (Fed. Cir. 2012) ("The district court did not err in concluding that these terms have plain meanings that do not require additional construction. ActiveVideo's proposed construction erroneously reads limitations into the claims and the district court properly rejected that construction and resolved the dispute between the parties."); *Krausz*, 122 F. Supp. 3d at 396 ("The term readily is understood by its plain language and context within the claim. ... Therefore, the court declines to construe the term.").

Thus, because neither of the two exceptions apply, the phrase "choosing for use in [a/the] communications network," should be given its "plain and ordinary meaning," just as Corning proposed to the PTAB and just as the PTAB adopted.  *See supra.*

### D.     If a Construction of "Choosing for Use" is Required, it Should be the One Supported by the Specification

As discussed above, Panduit's primary position is that the phrase "choosing for use in [a/the] communications network," should be given its "plain and ordinary meaning" and no further construction is necessary, just as Corning proposed to the PTAB and just as the PTAB adopted. *See supra.*  If, however, the Court deems that a construction is necessary, then Panduit respectfully proposes one supported by the specification: "selecting optical fiber, sorting optical fiber, or verifying optical fiber performance."[9]

Panduit's proposed construction finds support directly in the specification:

A new metric "DMD Shift" is derived from a DMD measurement. The DMD shift can be used as a scaling factor for industry-standard EMB and DMD metrics to yield a more accurate prediction of a multimode fiber's Bit Error Rate (BER) channel link performance. The metric can be related to the refractive index profile in MMF and can, therefore, be used

---

[9] *See* footnote 1, *supra.*

to optimize the design of MMF to achieve improved performance. **When implemented as a test algorithm in production, [DMD shift] can be used to select fiber, sort fiber, or verify fiber performance.** MMF compliant with this new metric will result in higher BER system performance for a given cable length, or allows a greater cable length for a given BER system performance.

Ex 2, '027 Patent at 2:52-64 (emphasis added); *see also id.* at Abstract ("When implemented as a test algorithm in production, [the metric] can be used to select, sort, or verify fiber performance."). The language shown in bold contains the alternative definition that Panduit proposes. Corning agrees that this language supports construction of "choosing for use," insofar as it also cites this language for support. (*See* DE 61-1 at 11 (citing ''027 Patent at Abstract, 2:59-67 as support)).

Indeed, this language discloses embodiments of the implementation of the claimed method. And each of these described activities (selecting fiber, sorting fiber, or verifying fiber performance) are the ways and reasons that multimode fiber is "chos[en] for use in [a/the] communications network."[10] Thus, if a construction is necessary, and Panduit maintains that it is not for the foregoing reasons, Panduit's alternative construction should prevail.

## V.   CONCLUSION

For the reasons given above, Panduit respectfully submits that, consistent with the position advocated by Corning and adopted by the PTAB in the IPR proceedings, the Court should find that the "plain and ordinary meaning" applies and no construction is necessary. If, however, the Court believes that a construction of "choosing for use in [a / the] communications network" is necessary, then it should be the construction that is taught by the specification "selecting optical fiber, sorting optical fiber or verifying optical fiber performance."

---

[10] To the extent Corning argues that Panduit's construction should be rejected because it does not repeat "communications network," Corning would be incorrect. The preamble already describes "selecting multimode optical fiber for use in a communications network," and thus it is unnecessary to repeat the intended purpose of the selected multimode fiber: for use in communications networks.

22

Dated:  September 4, 2020

/s/ F. Hill Allen
F. Hill Allen
N.C. State Bar No. 18884
THARRINGTON SMITH, L.L.P.
Post Office Box 1151
150 Fayetteville Street, Suite 1800
Raleigh, N.C. 27602-1151
Telephone: (919) 821-4711
Fax: (919) 829-1583
E-mail: hallen@tharringtonsmith.com

OF COUNSEL:
Kelly J. Eberspecher
Daniel S. Stringfield
STEPTOE & JOHNSON LLP
227 W. Monroe Street Suite 4700
Chicago, IL 60606
(312) 577-1300
keberspecher@Steptoe.com
dstringfield@Steptoe.com
Admitted *Pro Hac Vice*

Katherine D. Cappaert
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC 20036
(202) 429-6407
kcappaert@Steptoe.com
Admitted *Pro Hac Vice*

*Attorneys for Plaintiff Panduit Corp.*

23

**CERTIFICATE OF SERVICE**

I certify that on September 4, 2020, I served this brief by filing a true copy through the

Court's electronic filing system, which will send notification of the filing to all counsel of record.


/s/ F. Hill Allen
_____
F. Hill Allen
N.C. State Bar No. 18884
THARRINGTON SMITH, L.L.P.
Post Office Box 1151
150 Fayetteville Street, Suite 1800
Raleigh, N.C. 27602-1151
Telephone: (919) 821-4711
Fax: (919) 829-1583
E-mail: hallen@tharringtonsmith.com