IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-00229-FL

**Panduit Corp.**,

    Plaintiff,

v.

**Corning Incorporated**,

    Defendant.

**Order
(Sealed)**[1]

The parties to this patent-related dispute disagree over whether Defendant Corning Incorporated must respond to certain written discovery served by Plaintiff Panduit Corp. At issue are Corning's response to Interrogatory 8 and its responses to Requests for Production 3–13 and 15–17. Panduit asks the court to order Corning to turn over responsive documents and information which, to date, Corning has refused to do. D.E. 101. Corning opposes the motion, arguing that Panduit is trying to expand the scope of discovery. Resp. in Opp., D.E. 106. For the following reasons, the court grants the motion to compel.

I.    Discussion

Panduit's interrogatory and requests for production in the motion call for information related to manufacturing processes used by Corning for fiber production, including differential mode delay ("DMD"). According to Panduit's written discovery requests, the "DMD Shift Process" is the selection of a fiber following the subtraction of two measurements. *See* D.E. 102–

---

[1] Many documents in this case have been filed under seal. The parties shall review this order and, within 14 days, provide the case manager with a copy of this order reflecting any proposed redactions due to reference to sealed materials. The court will review the proposed redactions, determine if they are appropriate, and then file a copy of this order on the public docket.

4 at 7; D.E. 102–5 at 7. The parties dispute whether Corning's manufacturing process is relevant to this case. Corning believes the scope should be limited to its "processes for selecting already made fibers." Resp. in Opp. at 8. Panduit, however, believes it should include both manufacturing and selection of fibers. *See* Mem. Supp. Mot. to Compel, D.E. 102 at 8.

Under the Federal Rules, a party may move to compel discovery when another party fails to answer interrogatories or produce documents. Fed. R. Civ. P. 37(a)(3)(B)(iii)−(iv). The party resisting or objecting to discovery "bears the burden of showing why [the motion to compel] should not be granted." *Mainstreet Collection, Inc.* v. *Kirkland's, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010). To meet this burden, the non-moving party "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Id.* So Corning has the burden of convincing the court that it should not have to respond to Panduit's discovery requests.

When parties receive written discovery, there are three ways to respond: a party can object to the request, it can answer the request, or it can object and answer. If a party chooses to object to an interrogatory or request for production of documents, it must state the reason it is doing so with specificity. Fed. R. Civ. P. 33(b)(4) & 34(b)(2)(B). Failure to comply with the specificity requirement waives the objection. *Id.* 33(b)(4); *Hager* v. *Graham*, 267 F.R.D. 486 (N.D.W. Va. 2010) (finding that general objections to requests for production cannot properly state an objection).

Given the importance of stating objections with specificity, the court will review the objections Corning included in its responses. Both sets of responses begin with several General Objections. Despite the regularity with which general objections appear in discovery responses, courts throughout the Fourth Circuit have found that they are impermissible. *Williams* v. *MicroBilt*

*Corp.*, No. 3:19-CV-0085, 2021 WL 150401, at *3 & *5 (E.D. Va. Jan. 15, 2021) (discussing why general objections are impermissible); *Martin* v. *Montgomery*, No. 0:20–1400 & 0:20–1401, 2020 WL 6365352, at *2 (D.S.C. Oct. 29, 2020) ("The court agrees that the defendants' 'general objections' that do not refer to any specific interrogatory are waived because they are not specific."); *Atkins* v. *AT&T Mobility Servs., LLC*, Case No. 2:18-CV-00599, 2019 WL8017851, at *8 (S.D.W. Va. Apr. 25, 2019) ("Since the 2015 amendments, courts have been quick to reject boilerplate objections to discovery requests and have also penalized parties for relying on stock, general objections."); *Futreal* v. *Ringle*, No. 7:18-CV-00029-FL, 2019 WL 137587, at *4 (E.D.N.C. Jan. 8, 2019) (rejecting use of a general objection to raise a privilege claim); *Gross* v. *Morgan State Univ.*, Case No. JBK-17–448, 2018 WL 9880053, at *8 (D. Md. Feb. 9, 2018) (citing cases). So the court finds that these General Objections are waived for lack of specificity and will not consider them in assessing Corning's duty to respond.

Corning also included specific objections to each response at issue. As is relevant here, Corning objected to Interrogatory 8 because it was "overbroad, unduly burdensome, and not proportional to the needs of this case to the extent it seeks information regarding products not accused o[f] infringement in Plaintiff's Patent L.R. 303.1 infringement contentions." D.E. 102–6 at 11. It repeats similar objections relating to functionality for each of the requests for production at issue in Panduit's motion. *See* D.E. 102–7 at 6–12. Thus, the only objection that Corning can rely on in restricting the scope of its responses is its position that the scope of discovery is limited to information relating to functionality accused of infringement in Panduit's Local Patent Rule 303.1 contention. It has waived any other grounds for objection.

But the Local Patent Rules do not support Corning's objection. To the contrary, they place no limitation on the scope of discovery. In fact, they provide that a party may not object to

3

discovery that is "premature in light of, or otherwise conflicts with," the Local Patent Rules. Local Patent Rule 302.5. There are certain exceptions to that general prohibition, *see id.*, but Corning does not argue that any of them apply.

Perhaps aware of this shortcoming, Corning's response brief does not mention the Local Patent Rules. Instead, its brief focuses on a more general argument about the scope of discovery. It argues that the subjects of Panduit's discovery request "are not relevant to the case." Resp. in Opp. at 4. While this describes the general scope of discovery, *see* Fed. R. Civ. P. 26(b)(1), it is not among the objections Corning included in its responses. So Corning has also waived this objection. On these facts alone, the court finds that Panduit's motion to compel should be granted.

But even if Corning had included an appropriate objection, the court would still grant the motion on its merits. While the court agrees with Corning that the claims of the asserted patents themselves are important aspects of the action, under the Federal Rules, discovery is broad in scope and can relate to any of the claims and defenses in the case. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"). And whether the information is admissible at trial does not impact its discoverability. *Id.* ("Information within this scope of discovery need not be admissible in evidence to be discoverable."). The court finds no reason that the scope of discovery should not include all information related to the claims and defenses simply because the case involves patents.

Though the core of the patent claims may focus on the process of "selecting" portions of fibers, the manufacturing of the fibers is connected to the selection process. In its amended complaint, Panduit alleges that Corning makes, uses, or sells multimode optical fibers "that are made according to processes that infringe . . . one or more claims of the '027 Patent and '115

4

Patent[.]"[2] Compl., D.E. 43 ¶ 29. And Panduit believes these accused processes "follow the manufacturing and testing steps" it sets forth in Paragraphs 17–24 of the amended complaint. *Id.* ¶ 30. Because Panduit alleges that Corning makes the fibers according to processes that infringe, which could involve both manufacturing and selection of the fibers, manufacturing is relevant to the claims of the case. *See, e.g.*, *In re Gabapentin Pat. Litig.*, 393 F. Supp. 2d 278, 287 (D.N.J. 2005) ("The manufacturing process and testing conducted on samples made from that process are clearly relevant to the infringement inquiry."); *Gen-Probe Inc.* v. *Becton, Dickinson & Co.*, No. 09CV2319 BEN NLS, 2010 WL 2011526, at *3 (S.D. Cal. May 19, 2010) (finding manufacturing of infringing methods relevant to discovery).

Along with the claims of the complaint, the specification of the two patents at issue similarly describe that "[w]hen implemented as a test algorithm in production, [DMD shift] can be used to select fiber, sort fiber, or verify fiber performance." '115 Patent at 2:62–64; '027 Patent at 2:59–61. This language from the specification is relevant to the patent claims themselves as "[c]laims must be read in view of the specification, of which they are a part." *Markman* v. *Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd,* 517 U.S. 370 (1996). According to Panduit, this verification of fiber performance involves measurement and selection which dictate how future fibers will be manufactured. *See* Hr. Tr. 26:18–27:2. Panduit says Corning uses "patented Panduit methods on an ongoing iterative feedback loop[.]" *Id.* 42:18–42:19. Panduit believes that after Corning employees "draw fiber, they measure it, and if it doesn't meet specifications, including . . . DMD shift, or equivalence thereof, that gets fed back into the manufacturing process, and they tweak something[.]" *Id.* 21:20–21:23.

---

[2] "The '115 Patent" is United States Patent No. 8,488,115. "The '027 Patent" is United States Patent No. 8,351,027.

Panduit derives this theory, in part, from a video included in its amended complaint. Compl. ¶ 17. Panduit says the video describes that Corning's "automated system allows for real time adjustments to ensure the fiber is kept within specification." Hr. Tr. 22:10–22:11.[3] And Panduit believes a document covering "Q compensation" that Corning turned over from a deposition describes this verification process, including the monitoring of fibers in real time and DMD slope that is "fed back up" the process. *See id.* 22:15–22:20. Panduit points to a flow diagram in the Q Compensation document as showing a verification process of drawing fiber, measuring it, and using DMD slope to correct the process so that "you do better next time." *See* D.E. 102–3 at 10–11; Hr. Tr. 42:4–42:8.

Corning disagrees with Panduit's assessment, arguing that the patents relate only to "selecting th[e] fiber which is already manufactured." *Id.* 7:1–7:2. But Corning itself admits that making the fiber "is an inexact science." Hr. Tr. 10:8–10:9, 17:3. According to Corning, "[W]e look at how good it is and how we might improve that, and we take information from our manufactured fiber and we feed that back into the manufacturing process." Hr. Tr. 16:18–16:21. Corning's counsel added that this process involves "taking data from a measured fiber and feeding it back in and so it affects future fibers[.]" *Id.* 17:25–18:1. And even if, as Corning's counsel argues, "the tension in which glass is pulled down is tweaked based on optical properties of previously made fibers . . . not tweaked based on the properties of the fiber that you're making[,]" the results of the measurement and selection process influence the manufacturing process of future fibers. *See id.* 18:12–18:15.

So the court finds that Corning's fiber manufacturing process is relevant to the claims and defenses in this case. *See, e.g.*, *Kimberly-Clark Worldwide, Inc.* v. *First Quality Baby Prod., LLC*,

---

[3] Citing Corning Inc., *Corning's Manufacturing Advantage (updated 2013)*, YouTube (July 26, 2013), https://www.youtube.com/watch?v=7tsF3mSpqX8.

No. 09-C-0916, 2010 WL 2990753, at *2 (E.D. Wis. July 27, 2010) ("[E]vidence of [the defendant's] entire manufacturing process may be relevant or lead to the discovery of relevant evidence.").

The court is also unpersuaded by Corning's argument that the discovery is not proportional to the needs of the case. Its counsel has argued that the burden of compliance would be "huge." *See* Hr. Tr. at 46:13–46:17. But it has presented no evidentiary support for its claims about the burden of production, which the Rules require it to do. *See Mondragon* v. *Scott Farms, Inc.*, 329 F.R.D. 533, 549 n.4 (E.D.N.C. 2019); *Morrissey* v. *William Morrow & Co.*, 739 F.2d 962, 967 (4th Cir. 1984) ("Argument of counsel is not evidence[.]"). And any concerns Corning has about producing sensitive business information are mitigated by the existence of a protective order. So Corning has not shown that the requested discovery is disproportional to the needs of the case.

## II. Conclusion

The court grants Panduit's motion to compel (D.E. 101). Corning must answer Panduit's Interrogatory 8 and respond to Requests for Production 3–13 and 15–17. Each party shall bear their own costs.

Dated: June 29, 2021

*Robert T. Numbers II* (signature)

Robert T. Numbers, II
United States Magistrate Judge